IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
AT NASHVILLE

| | |
|---|---|
| LAMPKINS CROSSING, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Docket No. _____ |
| | ) |
| WILLIAMSON COUNTY, | ) |
| TENNESSEE, | ) |
| | ) |
| Defendant. | ) |

## COMPLAINT

Comes now, Lampkins Crossing, LLC and respectfully shows as follows:

### PARTIES

1. The plaintiff, Lampkins Crossing, LLC ("Lampkins Crossing"), is a limited liability company organized under Tennessee law with its principal place of business in Franklin, Tennessee.

2. The defendant, Williamson County, Tennessee ("the County"), is a legal subdivision of the State of Tennessee, created and existing under the constitution and laws of the State of Tennessee and is empowered by the State to act through its governing bodies and their respective officials, employees, and representatives

3. The County created the Williamson County Regional Planning Commission ("Planning Commission") and delegated to the Planning Commission the land-use, planning, and development functions of the County pursuant to Tenn. Code Ann. §§13-3-401, *et seq*.

4. The County may be served with process by serving the County Mayor, Hon. Rogers Anderson, pursuant to Fed. R. Civ. P. 4(j)(2).

## JURISDICTION AND VENUE

5. As described below, this action presents a question of federal constitutional law and the deprivation of Lampkins Crossing's rights in violation of federal law.

6. This Court has original, subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331 and 28 U.S.C. §1343.

7. This Court has general, personal jurisdiction over the County because the County is located in the State of Tennessee.

8. This district is the proper venue for this action pursuant to 28 U.S.C. §1391(b) because the County is located in this district and the acts and events forming the subject matter of this action occurred in this district.

## FACTS

9. In the fall of 2015, Lampkins Crossing was considering whether to enter into a land purchase agreements ("Contracts") to purchase a 133-acre parcel of real property and a 14-acre parcel of real property located in the County at 6269 Lampkins Bridge Road, Franklin, Tennessee ("Property").

10. At the time Lampkins Crossing was considering whether to enter into the Contracts, the Property was located in the I-840/Arno Road traffic shed which permitted 1.19 dwelling units per acre and a zoning density which permitted 1.0 dwelling units per acre. As result, the then-existing County land-use laws and regulations would have allowed for the development of 133 residential building lots on the Property.

11. In reliance upon the then-existing County land-use laws and regulations, Lampkins Crossing entered into the Contracts and paid over $200,000.00 in non-refundable funds pursuant to the Contracts.

12. Upon entering into the Contracts, Lampkins Crossing acquired legally protected rights in the Property.

13. After entering into the Contracts, Lampkins Crossing began taking steps to fulfill the then-existing County land-use laws and regulations applicable to the development of the Property into 133 building lots. Those steps included, but were not limited to, (a) hiring land surveyors, aerial surveyors, hydrologists, soil scientists, traffic engineers, and civil engineers, (b) entering into a contract for the treatment of waste from the homes that would eventually be built on the Property, and (c) securing approvals for utilities (*e.g.*, water, gas and electricity) to serve the homes that would eventually be built on the Property, at a combined cost to Lampkins Crossing of approximately $300,000.00. As Lampkins Crossing took the above-described steps toward developing the Property, Lampkins Crossing notified the County.

14. On December 8, 2015, representatives and engineers for Lampkins Crossing held a pre-application conference with the County planning director. At that conference, Lampkins Crossing presented a site-layout plan depicting how the Property could be legally developed into 133 building lots. During the conference, the County planning director provided minor comments and suggestions for improvement of the site-layout plan but indicated that his office would approve the plan for submission to the Planning Commission.

15. Also during the conference, the County planning director stated that the County would require a traffic study pursuant to Section 19.05 of the Williamson County Zoning Ordinance ("Zoning Ordinance").

16. Section 19.05 of the Zoning Ordinance states,

**SECTION 19.05: Traffic Study Requirements**

(A) Within areas designated as Municipal Growth Areas (MGA), Grassland Villages (GVC, GVC2, GVC3, GVC4), and Suburban Infill and Conservation (SIC) areas, all developments must conduct a traffic study in

3

accordance with the criteria outlined below, and in accordance with Traffic Study Guidelines (available in the Community Development Department).

(B) Outside of areas designated as Municipal Growth Areas (MGA) and Suburban Infill and Conservation (SIC) areas, all developments that are likely to generate 400 or more trips in the p.m. peak hour must conduct a traffic study in accordance with the criteria outlined below, and in accordance with Traffic Study Guidelines (available in the Community Development Department). The County also has the option to allow or require traffic studies for developments that are located outside of areas designated as MGA or SIC areas and that are considered likely to generate fewer than 400 trips in the p.m. peak hour.

(C) Prior to the commencement of a traffic study, a meeting shall be scheduled between the applicant and Community Development Department staff to discuss the scope of the traffic study. Elements of the scope shall include, but are not limited to, the following:

 (1) Identification of any deficiencies that limit the collector and/or arterial capacity;
 (2) Geometry;
 (3) Alignment;
 (4) Volume;
 (5) Trip generation; and
 (6) Trip distribution.

(D) At a minimum, and utilizing the factors listed above, the study area shall include the collector roadway, where applicable, from the project site to the arterial roadway that serves the proposed development. The study area shall also include the segment of the arterial roadway that limits the capacity available to the development.

(E) The traffic study shall be conducted by a qualified traffic engineer or transportation planner, and said study shall be reviewed by a traffic consultant hired by the County, whose services are payable by the applicant.

(F) The traffic study shall identify the necessary improvements to mitigate the deficiencies stated therein.

(G) The required roadway capacity adjustment may be mitigated through County-approved, applicant-implemented improvements to the roadway network, pursuant to the recommendations of the traffic study prepared in accordance with the provisions of this Section, and approved by the County.

17. Pursuant to Section 19.05(E) of the Zoning Ordinance, Lampkins Crossing commissioned a traffic study by a qualified traffic engineer with Kimley-Horn Engineers ("KHE").

18. According to Section 19.05(B) of the Zoning Ordinance, a traffic study required by Section 19.05 shall be conducted in accordance with the criteria outlined in the section and in accordance with the Traffic Study Guidelines available in the County Community Development Department.

19. Relying upon Section 19.05(E) of the Zoning Ordinance, the County engaged RPM Transportation Consultants ("RPM") to review the KHE traffic study. However, instead of reviewing the KHE traffic study in accordance with the criteria outlined in Section 19.05 and the Traffic Study Guidelines, as required by Section 19.05 of the Zoning Ordinance, RPM reviewed the KHE traffic study in accordance with a policy published by the American Association of State Highway and Traffic Officials ("ASHTO").

20. ASHTO is a private organization, not a public subdivision of the County, whose policies are continually changing. The County has not adopted any policies promulgated by ASHTO, and the County's Traffic Study Guidelines do not incorporate any ASHTO policies.

21. The County does not require compliance with the ASHTO policies on a consistent and uniform basis for similarly situated properties.

22. On June 9, 2016, Lampkins Crossing presented to the Planning Commission a concept plan of the 133-lot proposed development on the Property ("Concept Plan"). The Concept Plan fully complied with all applicable, then-existing County laws and regulations.

5

23. The Planning Commission unanimously approved the Concept Plan on June 9, 2016, and on July 14, 2016, the Planning Commission approved the minutes of the Planning Commission's June 9, 2016 meeting.

24. Upon the Planning Commission's approval of the minutes from its June 9, 2016 meeting, Lampkins Crossing acquired vested rights in the Concept Plan pursuant to the Tennessee Vested Property Rights Act of 2014 found at Tenn. Code Ann. §13-3-413.

25. According to the minutes of the Planning Commission's June 9, 2016 meeting, one of the conditions to the Planning Commission's approval of the Concept Plan was the following:

> The Preliminary Plat must address the following:
>
> 1. Submission of roads, drainage and erosion control plans for review and approval by the County Engineer. Such would include off-site improvements as specified in the Traffic Impact Analysis review letter from the County's traffic engineering consultant (See Attachment 19-3). Off-site improvements must be approved by the County Highway Commission and TDOT, as applicable, prior to Preliminary Plat submittal; . . .
>
> The Final Plat must address the following:
>
> 1. Prior to submittal of a Final Plat, the off-site improvements as specified in the Traffic Impact Analysis review letter from the County's traffic engineering consultant (See Attachment 19-3), must be completed in accordance with the approved plans . . .

26. At no time during the June 9, 2016 meeting did the Planning Commission state that its approval of the Concept Plan was conditional upon Lampkins Crossing complying with RPM's recommendations.

27. Because the Planning Commission's minutes required Lampkins Crossing to comply with RPM's review letter, which contained road-improvement recommendations derived from an ASHTO policy, the Planning Commission relinquished its public functions to a private

6

organization and imposed road-improvement obligations upon Lampkins Crossing without due process of law in violation of the Due Process Clause of the U.S. Constitution.

28. In addition, requiring Lampkins Crossing to comply with an ASHTO policy when the County does not require other similarly situated developers to comply with the ASHTO policies is a violation of Lampkins Crossing's rights under the Equal Protection Clause of the U.S. Constitution.

29. On August 17, 2016, Lampkins Crossing paid the County the applicable fees and submitted to the Planning Commission a Preliminary Plat consistent with the Concept Plan.

30. In order to improve Lampkins Bridge Road as required by the Planning Commission, a 50-foot right-of-way would be required and the County and its consultants insisted that a 50-foot right-of-way existed. On October 11, 2016, however, the County informed representatives of Lampkins Crossing that there was not, in fact, a pre-existing 50-foot right-of-way along Lampkins Bridge Road and that it would be Lampkins Crossing's responsibility to acquire sufficient easements at Lampkins Crossing's expense to create a 50-foot right-of-way.

31. Although the requirement to obtain a 50-foot right-of-way is a product of the Planning Commission requiring Lampkins Crossing to comply with an extra-legal ASHTO policy in violation of the law, in an effort to proceed with the development of the Property as quickly as possible, Lampkins Crossing undertook to acquire a 50-foot right-of-way. However, Lampkins Crossing did not succeed.

32. Further, and although the requirement to obtain a 50-foot right-of-way is a product of the Planning Commission requiring Lampkins Crossing to comply with an extra-legal ASHTO policy in violation of the law, Lampkins Crossing offered to escrow sufficient funds

with the County to enable the County to acquire the sufficient easements for a 50-foot right-of-way. However, the County refused.

33. On November 28, 2016, a meeting was held among representatives of the County and Lampkins Crossing during which the County informed Lampkins Crossing that it would not exercise its power of eminent domain to acquire sufficient property to create a 50-foot right-of-way even though the County had used its power of eminent domain on other similarly situated projects.

34. Thereafter, the County refused to consider Lampkins Crossing's application for Preliminary Plat approval without explanation.

35. Meanwhile, unbeknownst to Lampkins Crossing, the County had been secretly taking steps to change the traffic shed requirements for the Property which would result in reducing the number of building lots that could be built on the Property.

36. On June 13, 2016, the County purportedly passed late-filed Resolution 6-16-32, changing the traffic shed requirements for the Property which effectively reduced the number of lots allowed on the Property from 133 to 26.

37. Prior to passage of late-filed Resolution 6-16-32, the County did not follow lawful procedures, including, without limitation, giving notice to Lampkins Crossing and the owners of the Property that the proposed change in the traffic shed requirements would decrease the permitted density on the Property by more than 80%.

38. As a result of the foregoing, Lampkins Crossing has suffered damages as a result of having to spend vast sums of money to acquire legally protected rights in the Property and to fulfill the extra-legal requirements imposed by the County for the development of the Property per the Concept Plan in violation of the law. In addition, Lampkins Crossing has suffered damages as a result of being unable to develop the Property per the Concept Plan and sell the

8

building lots that would have been built on the Property. The damages Lampkins Crossing has suffered as a result of the County's unlawful conduct and deprivation of Lampkins Crossing's vest property rights exceeds $10,500,000.00.

## COUNT I
## VIOLATION OF 42 U.S.C. §1983 – PROCEDURAL DUE PROCESS

39. Lampkins Crossing incorporates by reference the allegations contained in paragraphs 1 through 38 above.

40. Neither the Zoning Ordinance, the Traffic Study Guidelines, nor any applicable County land-use law or regulation requires compliance with any ASHTO policy. By requiring Lampkins Crossing to comply with the RPM review letter, which made recommendations based upon an ASHTO policy, the County required Lampkins Crossing to comply with road-improvement regulations that had not been legally promulgated by the County.

41. ASHTO is not a subdivision of the County. ASHTO is a private organization which continually changes its policies. By requiring Lampkins Crossing to comply with RPM's review letter, which contained recommendations based upon an ASHTO policy, the County abrogated its public responsibility to promulgate regulations through the then-existing legislative process and unlawfully turned that responsibility over to a private organization.

42. The County purportedly changed the traffic shed requirements applicable to the Property without complying with the then-existing legal requirements to do so.

43. The County's above-described actions demonstrate an established state procedural mechanism that effects a deprivation, or contributes to cause a deprivation, of Lampkins Crossing's vested property rights.

44. The County's above-described actions are random and unauthorized acts by the State that caused a deprivation of Lampkins Crossing's vested property rights, and available

9

State remedies will not adequately compensate Lampkins Crossing for the losses it suffered as a result thereof.

45. The County's above-described actions deprived Lampkins Crossing of its vested property rights to develop the Property in accordance with the Concept Plan and denied Lampkins Crossing of its rights to procedural due process under color of state law in violation of 42 U.S.C. §1983.

46. Lampkins Crossing has been damaged by the County's deprivation of its right to procedural due process under color of state law.

## COUNT II
## VIOLATION OF 42 U.S.C. §1983 - SUBSTANTIVE DUE PROCESS

47. Lampkins Crossing incorporates by reference the allegations contained in paragraphs 1 through 46 above.

48. Neither the Zoning Ordinance, the Traffic Study Guidelines, nor any applicable County land-use law or regulation requires compliance with any ASHTO policy. By requiring Lampkins Crossing to comply with the RPM review letter, which made recommendations based upon an ASHTO policy, the County required Lampkins Crossing to comply with road-improvement regulations that had not been legally promulgated by the County.

49. ASHTO is not a subdivision of the County. ASHTO is a private organization which continually changes its policies. By requiring Lampkins Crossing to comply with RPM's review letter, which contained recommendations based upon an ASHTO policy, the County abrogated its public responsibility to promulgate regulations through the then-existing legislative process and unlawfully turned that responsibility over to a private organization.

50. The County purportedly changed the traffic shed requirements applicable to the Property without complying with the then-existing legal requirements to do so.

10

51. The County's requirement for Lampkins Crossing to comply with regulations that the County has not lawfully adopted is clearly arbitrary and unreasonable and shocks the conscience of a civil society governed by lawfully promulgated regulations.

52. The County's abrogation of its public responsibility to promulgate regulations through the then-existing legislative process and turning that responsibility over to a private organization is clearly arbitrary and unreasonable and shocks the conscience of a civil society governed by lawfully promulgated regulations.

53. The County's purported change of the traffic shed requirements applicable to the Property without complying with the then-existing legal requirements to do so is clearly arbitrary and unreasonable and shocks the conscience of a civil society governed by lawfully promulgated regulations.

54. The County had no rational basis (a) to require Lampkins Crossing to comply with road improvement regulations that had not been lawfully promulgated by the County, (b) to abrogate its public responsibility to promulgate regulations through the then-existing legislative process and turn that responsibility over to a private organization and (c) to change the traffic shed requirements applicable to the Property without complying with the then-existing legal requirements to do so.

55. The County's above-described actions violate Lampkins Crossing's vested property rights to develop the Property in accordance with the Concept Plan and denied Lampkins Crossing of its rights to substantive due process under color of state law in violation of 42 U.S.C. §1983.

56. Lampkins Crossing has been damaged by the County's deprivation of its right to substantive due process under color of state law.

## COUNT III
## VIOLATION OF 42 U.S.C. §1983 – EQUAL PROTECTION

57. Lampkins Crossing incorporates by reference the allegations contained in paragraphs 1 through 56 above.

58. Lampkins Crossing is similarly situated to other parties appearing before the Planning Commission for the development of real property.

59. The County, through the Planning Commission, conditioned its approval of Lampkins Crossing's Concept Plan upon compliance with an ASHTO policy which is not consistent with the requirements imposed on other similarly situated parties.

60. The County refused to exercise its power of eminent domain to acquire a 50-foot right-of-way that would serve the Lampkins Crossing's project even though the County had used its power of eminent domain on other similarly situated projects.

61. The County has no rational basis to treat Lampkins Crossing differently from other similarly situated parties.

62. The County's above-described actions are clearly arbitrary and unreasonable.

63. The County's above-described actions are a denial of Lampkins Crossing's constitutional right to equal protection in violation of 42 U.S.C. §1983 under color of state law.

64. Lampkins Crossing has been damaged by the County's violation of Lampkins Crossing's constitutional right to equal protection.

## PRAYER FOR RELIEF

WHEREFORE, premises considered, Lampkins Crossing, LLC prays as follows:

1. That the Court award it a judgment against the County in an amount determined at trial, but estimated to be in excess of $10,500,000.00, for the County's denial of Lampkins

Crossing's constitutional rights to procedural due process, substantive due process, and equal protection under color of state law in violation of 42 U.S.C. §1983;

2. That the Court award Lampkins Crossing a judgment against the County for its reasonable attorneys' fees pursuant to 42 U.S.C. §1988;

3. That the Court award Lampkins Crossing a judgment against the County for its reasonable attorneys' fees pursuant to Tenn. Code Ann. §§29-37-101, *et seq.*;

4. That the Court empanel a jury to try all issues triable by a jury; and

5. That the Court award Lampkins Crossing such further relief to which it may be entitled.

RESPECTFULLY SUBMITTED,

*[signature]*

Todd E. Panther (#14438)
**Tune, Entrekin & White, P.C.**
315 Deaderick Street, Suite 1700
Nashville, TN 37238
(615) 244-2770 - telephone
(615) 244-2778 – fax
tpanther@tewlawfirm.com – e-mail
*Attorney for Lampkins Crossing, LLC*