IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
AT NASHVILLE

| | |
|---|---|
| LAMPKINS CROSSING, LLC, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> WILLIAMSON COUNTY, TENNESSEE ) <br> ) <br> Defendant. ) | Case No. ; 3:17-cv-00906 <br> Judge Trauger |

## MEMORANDUM OF LAW IN SUPPORT OF THE DEFENDANT WILLIAMSON COUNTY TENNESSEE'S MOTION TO DISMISS

The defendant, Williamson County, Tennessee ("County"), submits this Memorandum of Law in support of its Motion to Dismiss under Rule 12 (b)(1) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction.

**I.**

**CONCISE STATEMENT OF THE FACTUAL AND LEGAL ISSUES JUSTIFYING RELIEF**

The plaintiff claims that the County violated its due process and equal protection rights when the Williamson County Regional Planning Commission ("Planning Commission") conditioned approval of a "concept plan" for a residential subdivision upon the plaintiff's constructing of off-site road improvements, a condition that the plaintiff claims it is unable to fulfill. The plaintiff asserts that the Planning Commission's decision was based upon the recommendation of its traffic consultant, who improperly relied upon the standards of the

1

American Association of State Highway and Traffic Officials ("ASHTO"), which had allegedly never been adopted by the County or the Planning Commission as a standard.

The County maintains that the plaintiff 's claims are not ripe for adjudication, because the Planning Commission's conditional approval was not a final, reviewable decision. The plaintiff failed to explore other development alternatives, resubmit its plans, or seek a modification of the conditions it considered unacceptable. It was thus unclear whether the plaintiff's desired use of its property would be denied for all uses and purposes.

The County relies upon *Williamson County Regional Planning Commission vs. Hamilton Bank*, 473 U.S. 172, 105 S.Ct. 3108, 87 L.Ed. 2d 126 (1985) and progeny. Based upon the lack of finality of the County's decision, the plaintiff's claims are not ripe for adjudication. This Court therefore lacks subject matter jurisdiction and the claims should be dismissed.

## II.

### LEGAL STANDARD AND BURDEN OF PROOF FOR A FACTUAL CHALLENGE TO SUBJECT MATTER JURISDICTION

This is a factual challenge to subject matter jurisdiction. When the Court reviews a factual attack on subject matter jurisdiction, no presumption of truthfulness applies to the factual allegations of the complaint. *United States v. Ritchie*, 15 F. 3d 592, 598 (6th Cir. 1994). The Court may rely upon affidavits or any other evidence before it and has wide discretion to collect evidence to determine the issue. *Rogers v. Stratton Indus.*, 798 F. 2d 913, 915 (6th Cir. 1986). The plaintiff has the burden of proof to show subject matter jurisdiction. *Moir v. Cleveland Reg'l. Trans. Auth.*, 895 F.2d 266, 269 (6th Cir. 1990).

2

## III.

## FACTS

In the Fall of 2015, the plaintiff acquired an option to purchase 147 acres of land on Lampkin's Bridge Road in Williamson County, Tennessee, for the purpose of residential development. The plaintiff commenced the process to obtain the necessary planning approvals for a 133 lot subdivision. (Complaint ¶¶ 9-21). The plaintiff obtained a traffic study, which was reviewed by the County's traffic consultant. (Id. ¶17-18). On June 9, 2016, the plaintiff submitted the concept plan for the development, which was called "Lampkins Crossing," to the Planning Commission. (Id. ¶22).

The Planning Commission approved the concept plan with the following conditions:

"The Preliminary Plat must address the following:

1. Submission of roads, drainage and erosion control plans for review and approval by the County Engineer. Such would include off-site improvements specified in the Traffic Impact review letter from the County's traffic engineering consultant (*See* Attachment 19-3). Off-site improvements must be approved by the County Highway Commission and TDOT, as applicable, prior to Preliminary Plat submittal;"

\*          \*          \*

(Complaint, ¶25; Declaration of Michael Matteson, Exhibit 1 to Motion, ¶6, Exhibit C) (Hereinafter "Matteson Decl.")

The referenced Attachment 19-3, the County traffic consultant's report, specified the following off-site road improvements to be constructed by the developer:

1.. . .that Lampkins Bridge Road should be widened to include 11-foot travel lanes and 4-foot shoulders on both sides of the roadway within the collector travel shed.

\*          \*          \*

3

3. An eastbound right turn deceleration lane should be constructed on Murfreesboro Road at Lampkins Bridge Road . . .

4. A westbound left turn deceleration lane should be constructed on Murfreesboro Road at Lampkins Bridge Road . . .

(*Id*.)

On August 3, 2016, the engineering representative for the plaintiff, Jamie Reed of SEC, Inc., appeared at the August 3, 2016, meeting of the Highway Commission. At that meeting, the Highway Commission approved the proposed road improvements with the conditions that all work be completed within existing right-of-ways, utilizing 3:1 slopes, and that the applicant provide 50 foot cross-sections and signed easements from affected owners on Lampkins Bridge Road. (*See* Matteson Decl., ¶10; Declaration of Elaine Vasquez, Exhibit 2 to Motion, ¶3, Exhibit A.)

On August 17, 2016, the plaintiff submitted the preliminary plat for the subdivision through the County's on-line submittal system. On August 18, 2016, the County planning staff informed the project representative for the plaintiff that the preliminary plat could not be considered in the current agenda cycle, because of the failure to comply with the conditions set by the Highway Commission. (Matteson Decl., ¶11).

Between August 18, 2016, and January 31, 2017, the County Planning Director, Michael Matteson, participated in numerous discussions, both by email and face-to-face, with Tom Moon, the sole member of the plaintiff and other representatives of the plaintiff, concerning possible alternatives or compromises that might satisfy the Planning Commission's conditions relating to the improvements to Lampkins Bridge Road. (Matteson Decl., ¶12).

On November 18, 2016, Attorney George Dean, on behalf of the plaintiff, sent a letter to John Lackey, the Chair of the Planning Commission, requesting a reconsideration of the concept

4

plan, based upon an apparent mutual mistake of the parties concerning a presumptive 50-foot right-of-way for state roads. (Matteson Decl., ¶13, Exhibit D). However, there was never a formal follow-up request or actual submittal by the developer to actually have this request for reconsideration set on an agenda of the Commission. (*Id.*)

On November 28, 2016, at the request of Mr. Moon, a meeting was held at the County Administrative Complex, attended by Mr. Matteson, Mr. Moon, Mr. Dean, engineering and planning consultants representing the plaintiff, representatives of the Highway Department and engineers and attorneys representing the County. (Matteson Decl. ¶14).

At that meeting, Mr. Moon confirmed that he had been unable to obtain easements from the other owners on Lampkins Bridge Road. He also offered to pay the County for its cost of acquiring the property by eminent domain. The County Highway Department representatives and County Attorney explained that this was contrary to the County's custom and policy. (Matteson Decl. ¶15).

At this same meeting, those present agreed that the County Highway Department would agree to a reduction of the required slopes on Lampkins Bridge Road from 3:1 to 2:1, but that this change would require Highway Commission approval. Mr. Moon agreed to research whether with the reduced slopes, the required traffic lanes and shoulders could fit within existing right-of-way, so that easements from neighbors would not be required. He also said that he would research how the road improvements might affect a cemetery at or near the project. (Matteson Decl., ¶16).

On January 23, 2017, Mr. Moon sent Mr. Matteson an email suggesting that the plaintiff might submit a revised concept plan showing less-extensive road improvements with a lesser density. (Matteson Decl., ¶17, and Exhibit E thereto). On January 24, 2017, Mr. Moon sent Mr.

5

Matteson an email advising that his engineer would be unable to draw a revised plan so soon and that he would have to resubmit for the April Planning Commission meeting. (Matteson Decl., ¶18, Exhibit F).

On January 31, 2017, Mr. Matteson met for the last time with Mr. Moon to discuss options by which he could meet the conditions of the Planning Commission and proceed with the project. One of the items discussed was lesser density. Mr. Moon advised Mr. Matteson at that meeting that he would consider a lesser density, specifically .56 units per acre. Mr. Matteson advised Mr. Moon that the developer would need to perform a new traffic count for the affected streets to see if that density could be accommodated. At this same meeting, the two also discussed the developer's shifting the road improvements more onto the project property to reduce the number of people from whom the developer would have to acquire right-of-way and to lessen impact on an historic cemetery on or near the project property. Finally, the two discussed the option of the developer's re-submitting a concept plan with the same number of lots as previously approved, but with the burden upon the developer to prove that the road improvements were not needed, i.e. to follow up on what Mr. Matteson had understood was the request in Mr. Dean's November 18, 2016, letter.

The January 31, 2017, meeting was the last contact anyone at the County Planning Department has been contacted with Mr. Moon or any other person representing the plaintiff's project.

On February 24, 2017, the plaintiff and Mr. Moon filed suit against the County in the Williamson County Circuit Court, alleging the same or similar theories of recovery as in this case. *See Tom Moon and Lampkin's Crossing, LLC v. Williamson County, Tennessee*, No. 2017-96 (Wmson. Co. Cir. Ct., February 24, 2017). However, the plaintiffs filed a notice of

voluntary nonsuit on April 4, 2017, and an order of dismissal was entered that same day. (Certified copies of these documents are attached as Collective Exhibit 3 to the Motion to Dismiss).

## IV.
## THE WILLIAMSON COUNTY PLANNING PROCESS

The planning process for large residential subdivision in Williamson County is governed by the Williamson County Subdivision Regulations (Hereinafter "Subdivision Regulations"). *See* Matteson Decl. Ex. B. The Subdivision Regulations provide, in part:

\*  \*  \*

**SECTION II –** DEFINITIONS

\*  \*  \*

**2.2 Words and Terms Defined**

Large Lot Major Subdivision -  Any subdivision in which lots are five (5) acres or greater in area, which includes any of the following, or is greater than five (5) or more lots.
a.  Requirements of any bondable improvements.
b.  A petition for a variance from these regulations.
c.  A notification to adjacent owners and a public hearing because the lots within a proposed subdivision are substantially out of character with surrounding developments.

\*  \*  \*

Pre-application Conference -  A meeting held between applicant and Planning Staff to discuss requirements of plat approval.

Preliminary Plat -  The preliminary drawing or drawings, described in these regulations, indicating the manner or layout of the subdivision to be submitted to the Planning Commission for approval.

\*  \*  \*

Concept Plan -   A generalized concept plan of subdivision offering information in regard to proposed improvements and natural features of the property in question prepared prior to preliminary plat to save time and expense in reaching general agreement as to the form of the plat and the objectives of these regulations.

7

## SECTION III – SUBDIVISION APPLICATION PROCEDURE, APPROVAL PROCESS AND PLAT SPECIFICATIONS

### 3.1 General Procedure

1. Classification of Subdivisions

Whenever any subdivision of land is proposed, and before any permit for erection of a structure in such proposed subdivision shall be granted, the subdividing owner, or his authorized agent, shall apply for a secure approval of such proposed subdivision in accordance with the following procedure (see Table III-I)

     \*     \*     \*

d. Large Lot Major Subdivision

 (i) Large Lot Major Subdivisions are any subdivisions in which lots are five (5) acres and greater in area, or is greater than five (5) or more lots.
 a. Requirement of any bondable improvements.
 b. A petition for a variance from these regulations.
 c. A notification to adjacent owners and a public hearing because the lots within a proposed subdivision are substantially out of character with surrounding development.

 (ii) Large Lot Major Subdivisions are subject to the following steps of approval:

 a. Preapplication Conference
 b. Concept Plan
 c. Preliminary Plat (may be concurrent with Concept Plan)
 d. Final Plat

2. Official Submittal Dates

a. For the purpose of these regulations, in cases of major, large lot major and small major subdivisions, the date of the regular meeting of the Planning Commission at which the preliminary or final approval of the subdivision plat is considered shall constitute the official submittal date. The Planning Commission shall approve, approve with conditions, or disapprove said plats within sixty (60) days of the official submittal date. Failure to act within the sixty (60) day period, except as agreed to by applicant, shall constitute approval of the subdivision.

     \*     \*     \*

### 3.2 Specific Procedure

1. Preapplication Conference-

Prior to approval of Concept plan for a subdivision, the applicant and/or his representative should discuss with staff of Planning Commission thee requirements of the Zoning Ordinance and Subdivision Regulations. At that time, staff will identify the approval process under which the proposal will be considered by the Planning Commission.

2. Concept Plan -

a. Prior to submission of a preliminary plat, Planning Commission approval of a concept plan may be required, depending upon the type of subdivision.

b. The concept plan should conform to the specifications noted on Form 2, Appendix A.

c. The concept plan with the information indicated above shall be submitted to Planning Staff at least twenty-one (21) days prior to consideration of the concept plan by the Planning Commission. Planning Staff shall determine whether all information pertinent to review has been provided and within ten (10) days of commencement of the above-noted review period shall notify the applicant that either:

    i) additional information is required; or

    ii) the concept plan has been accepted for consideration and shall be reviewed by the Planning Commission at its next meeting.

d. Planning Staff will prepare a recommendation regarding approval as presented, approval with changes or conditions, deferral, or disapproval of the Concept Plan.

e. The necessary plans for the next stage of the approval procedure, as identified in Section 3.1.1. herein, must be submitted within six (6) months of the review date of the Planning Commission. Failure to do so will mandate that the concept plan must be re-submitted to the Planning Commission for review, and consideration of any changes in conditions upon which the original review was based.

3. Preliminary Plat

a. Prior to submission of final plat, a preliminary plat may be required by the Planning Commission, depending upon type of subdivision.

b. An application for preliminary plat approval shall be submitted to Planning Staff twenty-one (21) days prior to the meeting of the Planning Commission at which the subdivision will be considered. All filing fees will be due with this submittal.

c. The preliminary plat shall conform to the specifications on Form 2, Appendix A.

d. The Planning Staff shall determine whether all information pertinent to the review has been provided and within ten (10) days of commencement of the above-noted review period shall notify the applicant that either:

9

i) additional information is required; or

ii) the preliminary plat has been accepted for consideration and shall be reviewed by the Planning Commission at its next meeting.

e.  Upon receipt of all required information for preliminary plat approval, the Planning Staff and other affected agencies shall review the proposed plat, compare the plat with the approved Concept plan and related information and the staff shall prepare a recommendation to the Planning Commission regarding outright approval, approval with changes or conditions (such as the need for approved grading and erosion control plans prior to site construction work commencing), deferral, or disapproval of the plat. . . .

*    *    *

**SECTION V –** REQUIREMENTS FOR IMPROVEMENTS, RESERVATIONS AND DESIGN

**5.1 General Improvements**

1. <u>Conformance to Applicable Rules and Regulations</u>

In addition to the requirements established herein, all subdivision plats shall comply with the following laws, rules, and regulations.

a.  All applicable statutory provisions.

b. The Comprehensive plan, the Zoning Ordinance, the Regulations for Wastewater Treatment and Land Disposal Systems, County Road Plan, adopted utility plans, and Capital Improvements Budget and Program.

c.  The special requirements of these regulations and any rules of applicable Williamson County Agencies.

d.  The rules of the State Department of Transportation when the subdivision or any lot contained therein abuts a state highway of connecting street.

e.   As a minimum the regulations of the State Department of Environment and Conservation and Williamson County Environmental Department pertaining to water mains and sanitary sewer design and construction.

Plat approval may be withheld when a subdivision is not in conformity with the above guide or policy and purposes of these regulations established in Sections 1.2 and 1.5.

Any proposed subdivision which is not substantially in conformity with the planned growth as presented in the Comprehensive Plan, the County Road Plan, the Zoning Ordinance & Capital Improvement Budget and Program, or adopted utility plans shall be

10

subject to disapproval on the grounds that it is premature and does not conform to existing plans.

**5.3 Roads**

<u>1. General Requirements</u>

These requirements shall apply to roads within or providing principle access to proposed subdivisions.

*      *      *

c. Where a publicly maintained road which is to be the principal access to a proposed conventional subdivision is inadequate, the Planning Commission shall require assurances for the necessary upgrading of the access road as a condition of approval of the final plat.

d. All required public road improvements on newly constructed roads shall be constructed in accordance with the Williamson County Roadway and Drainage Regulations and Procedures which are a part of these Subdivision Regulation. (See Appendix F.)

## V.

## ARGUMENT

**THE COMPLAINT SHOULD BE DISMISSED BECAUSE THE PLAINTIFF'S CLAIMS ARE NOT RIPE FOR ADJUDICATION AND THE COURT THEREFORE LACKS SUBJECT MATTER JURISDICTION.**

In the landmark ruling in *Williamson County Regional Planning Commission vs. Hamilton Bank*, 473 U.S. 172, 105 S.Ct. 3108, 87 L.Ed 2d 126 (1985) the United States Supreme Court established a two-part test for evaluating ripeness in "regulatory takings" cases challenging local land use decisions. The first prong is that the governmental entity charged with enforcing the regulations in question have rendered a "final decision." 473 U.S. at 186; 105 S.Ct. at 3116. The second prong requires that the plaintiff have sought compensation under applicable state law remedies. *Id.* The plaintiff has not alleged a taking in this case, so the second prong of the test

does not apply.  *See, e.g.*, *Southview Assocs., Ltd v. Bongartz*, 980 F.2d 84, 96-97 (2d Cir. 1992).

On the other hand, the "finality" rule of *Williamson County* applies to substantive due process and equal protection claims arising out of land use decisions.  *Williamson County*, 473 U.S. at 199, 105 S.Ct. at 3123 (due process claims); *Seguin v. City of Sterling Heights*, 968 F.2d 584, 588-89 (6th Cir. 1992) (equal protection claims).

In *Williamson County,* the Supreme Court held that a developer's failure to seek a zoning variance following the planning commission's outright rejection of his plans for a residential sub-division failed to satisfy he "final decision" requirement.  The Court noted that, despite the commission's formal refusal to approve the developer's plan, the plaintiff could have sought "variances that would have allowed it to develop the property according to its proposed plat, notwithstanding the Commission's finding that the plat did not comply with the zoning ordinance and subdivision regulations." *Williamson,* 473 U.S. at 188, 105 S.Ct. at 3117.  Despite the developer's insistence "that it 'did everything possible to resolve the conflict with the commission,'" the Court concluded that the developer had not obtained a final decision.  *Id.* at 188, 190, 105 S.Ct. at 3117, 3118.

Even an agency's outright denial of a landowner's particular plan to develop a property is not, by itself, sufficient to constitute a final decision ripe for review by a federal court, if the possibility exists that "some development will be permitted." *McDonald & Frates v. Yolo County*, 477 U.S. 340, 351-52, 106 S.Ct 2561,2567 91 L.Ed 2d 285 (1986).  *See also*, *Bongartz,* 980 F.2d at 98–99 (substantive due process claim unripe because developer of subdivision failed to explore other development possibilities and resubmit application to zoning board for approval).

12

Applying these precedents to the facts of this case, it is readily apparent that the plaintiff has not obtained a final decision from the County on its development plans, simply by virtue of having conditions placed on its concept plan approval that the plaintiff found unacceptable. Concept plan approval is but the second stage in the planning process for a major residential subdivision in Williamson County. Once the plaintiff's preliminary plat application was rejected in August of 2016, because of the failure to comply with the requirements of the Highway Commission, plaintiff's attorney proposed a reconsideration of the concept plan approval. However, there was no follow up request to place this item on the Planning Commission's agenda. The plaintiff's representatives also continued to communicate with and meet with representatives of the County Planning and Highway Departments to try and find compromises and alternatives for the project. As late as January 31, 2017, Tom Moon, the plaintiff's sole member, discussed with Mike Matteson, the County Planning Director, the possibility of modifying the off-site road requirements in exchange for lesser density or going back to the Planning Commission and asking to be relieved of the requirements entirely. The last Mr. Matteson knew, the plaintiff was planning to have its engineer draw a new plan for submittal on the April 2017 Planning Commission agenda. Rather than follow up on this, the plaintiff sued the County in state court and then filed this action.

Procedural due process claims are also subject to the finality rules of *Williamson County*, if they are "ancillary to the main issue" in the case. *See Braun v. Ann Arbor Charter Township*, 519 F.3d 572-73 (6th Cir. 2008); *Bigelow v. Mich. Dep't. of Natural Resources*, 970 F.2d 154, 160 (6th Cir. 1992). As the Court wrote in *Bigelow*:

> (A)ddressing the plaintiffs' procedural due process claim at this stage of the proceedings would allow future plaintiffs effectively to circumvent the ripeness requirement for takings claims simply by attaching a procedural due process claim to their complaint.

970 F.2d at 160.

The plaintiff's procedural due process claims are not only ancillary to the substantive due process claims, they are virtually identical. Under both counts, the plaintiff claims that the County's application of ASHTO road safety standards was illegal and unconstitutional, because the County had not formally adopted these standards. This claim is nonsensical and demonstrably false, as the County will show if it is required to answer the complaint, but for purposes of this jurisdictional argument it is necessary to prove or disprove this point.

At the time the plaintiff filed suit, the possibility still existed that "some development" would be permitted and even that the Planning Commission would reconsider its earlier position regarding the off-site road requirements. Therefore, under the above-cited Supreme Court and lower federal court precedents, the County's decision was not "final" and the plaintiff's claims are not ripe for adjudication and should be dismissed.

Respectfully Submitted,

*/s/Douglas Berry*

Douglas Berry (TN Bar No. 6927)
**MILLER & MARTIN PLLC**
401 Commerce Street, Suite 720
Nashville, TN 37219
Telephone: (615) 744-8620
Facsimile: (615) 744-8635
E-mail: doug.berry@millermartin.com
*Counsel for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on this the 26th day of June, 2017, I caused a copy of the foregoing be served on all counsel of record via the Court's Electronic Case Filing System:

Todd E. Panther
Tune, Entrekin & White P.C.
315 Deaderick Street, Ste. 1700
Nashville, TN 37238

<i>/s/ Douglas Berry</i>