IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
AT NASHVILLE

| | | |
|---|---|---|
| LAMPKINS CROSSING, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Docket No. 3:17-cv-00906 |
| | ) | |
| WILLIAMSON COUNTY, TENNESSEE, | ) | DISTRICT JUDGE TRAUGER |
| | ) | |
| Defendant. | ) | |

**RESPONSE BY LAMPKINS CROSSING, LLC IN OPPOSITION
TO MOTION TO DISMISS BY WILLIAMSON COUNTY, TENNESSEE**

The plaintiff, Lampkins Crossing, LLC ("Lampkins Crossing"), submits this response in opposition to the Fed R. Civ. P. 12(b)(1) motion to dismiss for lack of subject matter jurisdiction by Williamson County, Tennessee ("the County").

## I. SUMMARY OF RESPONSE

A. Lampkins Crossing alleges claims against the County for violation of Lampkins Crossing's rights to procedural due process, substantive due process, and equal protection arising out of the County (1) conditioning approval for the development of real property upon Lampkins Crossing complying with requirements the County did not lawfully adopt and which the County does not require of other similarly situated parties and (2) reducing the permitted density of the property by more than 80% without proper notice.

B. The ripeness requirement for a constitutional takings claim does not apply to Lampkins Crossing's claims against the County because Lampkins Crossing does not allege a takings claim.

C. If the ripeness requirement for a constitutional takings claim applied to Lampkins Crossing's claims against the County, compliance with that requirement would have been futile.

## II. FACTS

In the fall of 2015, Lampkins Crossing was considering whether to enter into land purchase agreements ("Contracts") to purchase a 133-acre parcel of real property and a 14-acre parcel of real property located in the County at 6269 Lampkins Bridge Road, Franklin, Tennessee ("Property"). (Moon Decl., ¶3).

At the time Lampkins Crossing was considering whether to enter into the Contracts, the Property was located in the I-840/Arno Road traffic shed which permitted 1.19 dwelling units per acre and a zoning density which permitted 1.0 dwelling units per acre. (Moon Decl., ¶4). As result, the then-existing County land-use laws and regulations would have allowed for the development of 133 residential building lots on the Property. (Moon Decl., ¶4). In reliance upon the then-existing County land-use laws and regulations, Lampkins Crossing entered into the Contracts and paid over $250,000.00 in non-refundable funds pursuant to the Contracts. (Moon Decl., ¶5). However, Lampkins Crossing never became the owner of the Property. (Moon Decl., ¶5).

After entering into the Contracts, Lampkins Crossing began taking steps to fulfill the then-existing County land-use laws and regulations applicable to the development of the Property into 133 building lots. (Moon Decl., ¶6). Those steps included, but were not limited to, (a) hiring land surveyors, aerial surveyors, hydrologists, soil scientists, traffic engineers, and civil engineers, (b) entering into a contract for the treatment of waste from the homes that would eventually be built on the Property, and (c) securing approvals for utilities (*e.g.*, water, gas and electricity) to serve the homes that would eventually be built on the Property, at a combined cost to Lampkins Crossing of approximately $300,000.00. (Moon Decl., ¶6). As Lampkins Crossing

took the above-described steps toward developing the Property, Lampkins Crossing notified the County. (Moon Decl., ¶6).

On December 8, 2015, representatives and engineers for Lampkins Crossing held a pre-application conference with the County planning director. (Moon Decl., ¶7). At that conference, Lampkins Crossing presented a site-layout plan depicting how the Property could be legally developed into 133 building lots. (Moon Decl., ¶7). During the conference, the County planning director provided minor comments and suggestions for improvement of the site-layout plan but indicated that his office would approve the plan for submission to the Planning Commission. (Moon Decl., ¶7). Also during the conference, the County planning director stated that the County would require a traffic study pursuant to Section 19.05 of the Williamson County Zoning Ordinance ("Zoning Ordinance"). (Moon Decl., ¶7).

Section 19.05 of the Zoning Ordinance states,

### SECTION 19.05: Traffic Study Requirements

**(A)** Within areas designated as Municipal Growth Areas (MGA), Grassland Villages (GVC, GVC2, GVC3, GVC4), and Suburban Infill and Conservation (SIC) areas, all developments must conduct a traffic study in accordance with the criteria outlined below, and in accordance with Traffic Study Guidelines (available in the Community Development Department).

**(B)** Outside of areas designated as Municipal Growth Areas (MGA) and Suburban Infill and Conservation (SIC) areas, all developments that are likely to generate 400 or more trips in the p.m. peak hour must conduct a traffic study in accordance with the criteria outlined below, and in accordance with Traffic Study Guidelines (available in the Community Development Department). The County also has the option to allow or require traffic studies for developments that are located outside of areas designated as MGA or SIC areas and that are considered likely to generate fewer than 400 trips in the p.m. peak hour.

**(C)** Prior to the commencement of a traffic study, a meeting shall be scheduled between the applicant and Community Development Department staff to

3

discuss the scope of the traffic study. Elements of the scope shall include, but are not limited to, the following:

  **(1)** Identification of any deficiencies that limit the collector and/or arterial capacity;
  **(2)** Geometry;
  **(3)** Alignment;
  **(4)** Volume;
  **(5)** Trip generation; and
  **(6)** Trip distribution.

**(D)** At a minimum, and utilizing the factors listed above, the study area shall include the collector roadway, where applicable, from the project site to the arterial roadway that serves the proposed development. The study area shall also include the segment of the arterial roadway that limits the capacity available to the development.

**(E)** The traffic study shall be conducted by a qualified traffic engineer or transportation planner, and said study shall be reviewed by a traffic consultant hired by the County, whose services are payable by the applicant.

**(F)** The traffic study shall identify the necessary improvements to mitigate the deficiencies stated therein.

**(G)** The required roadway capacity adjustment may be mitigated through County-approved, applicant-implemented improvements to the roadway network, pursuant to the recommendations of the traffic study prepared in accordance with the provisions of this Section, and approved by the County.

              (County Zoning Ordinance, §1905).

Pursuant to Section 19.05(E) of the Zoning Ordinance, Lampkins Crossing commissioned a traffic study by a qualified traffic engineer with Kimley-Horn Engineers ("KHE"). (Moon Decl., ¶8).

According to Section 19.05(B) of the Zoning Ordinance, a traffic study required by Section 19.05 shall be conducted in accordance with the criteria outlined in the section and in accordance with the Traffic Study Guidelines available in the County Community Development Department. (County Zoning Ordinance, §1905). Relying upon Section 19.05(E) of the Zoning

Ordinance, the County engaged RPM Transportation Consultants ("RPM") to review the KHE traffic study. (Moon Decl., ¶13).

On June 9, 2016, Lampkins Crossing presented to the Planning Commission a concept plan of the 133-lot proposed development on the Property ("Concept Plan"). (Moon Decl., ¶9). The Concept Plan fully complied with all applicable, then-existing County laws and regulations. (Moon Decl., ¶9). The Planning Commission unanimously approved the Concept Plan on June 9, 2016, and on July 14, 2016, the Planning Commission approved the minutes of the Planning Commission's June 9, 2016 meeting. (Moon Decl., ¶10). Upon the Planning Commission's approval of the minutes from its June 9, 2016 meeting, Lampkins Crossing acquired vested rights in the Concept Plan. Tenn. Code Ann. §13-3-413.

According to the minutes of the Planning Commission's June 9, 2016 meeting, one of the conditions to the Planning Commission's approval of the Concept Plan was the following:

The Preliminary Plat must address the following:

> 1. Submission of roads, drainage and erosion control plans for review and approval by the County Engineer. Such would include off-site improvements as specified in the Traffic Impact Analysis review letter from the County's traffic engineering consultant (See Attachment 19-3). Off-site improvements must be approved by the County Highway Commission and TDOT, as applicable, prior to Preliminary Plat submittal; . . .

The Final Plat must address the following:

> 1. Prior to submittal of a Final Plat, the off-site improvements as specified in the Traffic Impact Analysis review letter from the County's traffic engineering consultant (See Attachment 19-3), must be completed in accordance with the approved plans . . .

(Moon Decl., ¶11).

5

Case 3:17-cv-00906   Document 15   Filed 08/30/17   Page 5 of 16 PageID #: 138

At no time during the June 9, 2016 meeting did the Planning Commission state that its approval of the Concept Plan was conditional upon Lampkins Crossing complying with RPM's recommendations. (Moon Decl., ¶12).

Instead of reviewing the KHE traffic study in accordance with the criteria outlined in Section 19.05 and the Traffic Study Guidelines, as required by Section 19.05 of the Zoning Ordinance, RPM reviewed the KHE traffic study in accordance with a policy published by the American Association of State Highway and Traffic Officials ("ASHTO"). (Moon Decl., ¶13). Consequently, in order to make the off-site improvements to Lampkins Bridge Road as required by the Planning Commission's above-described condition, a 50-foot right-of-way would be required along Lampkins Bridge Road, not only along the boundary of the Property but also along the boundary of property Lampkins Crossing did not own or control. (Moon Decl., ¶13).

The County and its consultants initially insisted that a 50-foot right-of-way existed along Lampkins Bridge Road, but on October 11, 2016, the County informed representatives of Lampkins Crossing that there was not, in fact, a pre-existing 50-foot right-of-way along Lampkins Bridge Road and that it would be Lampkins Crossing's responsibility to acquire sufficient easements at Lampkins Crossing's expense to create a 50-foot right-of-way. (Moon Decl., ¶14).

Although the requirement to obtain a 50-foot right-of-way is a product of the Planning Commission requiring Lampkins Crossing to comply with an extra-legal ASHTO policy in violation of the law, in an effort to proceed with the development of the Property as quickly as possible, Lampkins Crossing undertook to acquire the County-required 50-foot right-of-way. (Moon Decl., ¶17). However, Lampkins Crossing did not succeed. (Moon Decl., ¶17).

Further, and although the requirement to obtain a 50-foot right-of-way is a product of the Planning Commission requiring Lampkins Crossing to comply with an extra-legal ASHTO policy in violation of the law, Lampkins Crossing offered to escrow sufficient funds with the County to enable the County to acquire sufficient easements for the County-required 50-foot right-of-way. (Moon Decl., ¶18). However, the County refused. (Moon Decl., ¶18).

On November 28, 2016, a meeting was held among representatives of the County and Lampkins Crossing during which the County informed Lampkins Crossing that it would not exercise its power of eminent domain to acquire sufficient property to create a 50-foot right-of-way even though the County had used its power of eminent domain on other similarly situated projects. (Moon Decl., ¶19). Thereafter, the County refused to consider Lampkins Crossing's application for Preliminary Plat approval without explanation. (Moon Decl., ¶19).

Meanwhile, unbeknownst to Lampkins Crossing, the County had been secretly taking steps to change the traffic shed requirements for the Property which would result in reducing the number of building lots that could be built on the Property. (Moon Decl., ¶20). On June 13, 2016, the County purportedly passed late-filed Resolution 6-16-32, changing the traffic shed requirements for the Property which effectively reduced the number of lots allowed on the Property from 133 to 26. (Moon Decl., ¶20). Prior to passage of late-filed Resolution 6-16-32, the County did not follow lawful procedures, including, without limitation, giving notice to Lampkins Crossing and the owners of the Property that the proposed change in the traffic shed requirements would decrease the permitted density on the Property by more than 80%. (Moon Decl., ¶20).

## III. LAMPKINS CROSSING'S CLAIMS

Neither the Zoning Ordinance, the Traffic Study Guidelines, nor any applicable County land-use law or regulation requires compliance with any ASHTO policy. (Complaint, ¶40). By requiring Lampkins Crossing to comply with the RPM review letter, which made recommendations based upon an ASHTO policy, the County required Lampkins Crossing to comply with road-improvement regulations that had not been legally promulgated by the County. (Complaint, ¶40).

ASHTO is not a subdivision of the County. (Complaint, ¶41). ASHTO is a private organization which continually changes its policies. (Complaint, ¶41). By requiring Lampkins Crossing to comply with RPM's review letter, which contained recommendations based upon an ASHTO policy, the County abrogated its public responsibility to promulgate regulations through the then-existing legislative process and unlawfully turned that responsibility over to a private organization. (Complaint, ¶41).

The County also purportedly changed the traffic shed requirements applicable to the Property without complying with the then-existing legal requirements to do so. (Complaint, ¶42).

Based upon the foregoing, Lampkins Crossing alleges that (i) the County's above-described actions demonstrate an established state procedural mechanism that effects a deprivation, or contributes to cause a deprivation, of Lampkins Crossing's vested property rights; (ii) the County's above-described actions are random and unauthorized acts by the State that caused a deprivation of Lampkins Crossing's vested property rights, and available State remedies will not adequately compensate Lampkins Crossing for the losses it suffered as a result thereof; and (iii) the County's above-described actions deprived Lampkins Crossing of its vested property

8

Case 3:17-cv-00906   Document 15   Filed 08/30/17   Page 8 of 16 PageID #: 141

rights to develop the Property in accordance with the Concept Plan and denied Lampkins Crossing of its rights to procedural due process under color of state law in violation of 42 U.S.C. §1983. (Complaint, ¶43-45).

Lampkins Crossing further alleges that (i) the County's requirement for Lampkins Crossing to comply with regulations that the County has not lawfully adopted is clearly arbitrary and unreasonable and shocks the conscience of a civil society governed by lawfully promulgated regulations; (ii) that the County's abrogation of its public responsibility to promulgate regulations through the then-existing legislative process and turning that responsibility over to a private organization is clearly arbitrary and unreasonable and shocks the conscience of a civil society governed by lawfully promulgated regulations; (iii) the County's purported change of the traffic shed requirements applicable to the Property without complying with the then-existing legal requirements to do so is clearly arbitrary and unreasonable and shocks the conscience of a civil society governed by lawfully promulgated regulations; (iv) the County had no rational basis (a) to require Lampkins Crossing to comply with road improvement regulations that had not been lawfully promulgated by the County, (b) to abrogate its public responsibility to promulgate regulations through the then-existing legislative process and turn that responsibility over to a private organization and (c) to change the traffic shed requirements applicable to the Property without complying with the then-existing legal requirements to do so; and (v) the County's above-described actions violate Lampkins Crossing's vested property rights to develop the Property in accordance with the Concept Plan and denied Lampkins Crossing of its rights to substantive due process under color of state law in violation of 42 U.S.C. §1983. (Complaint, ¶51-55).

9

Finally, Lampkins Crossing alleges that (i) Lampkins Crossing is similarly situated to other parties appearing before the Planning Commission for the development of real property; (ii) the County, through the Planning Commission, conditioned its approval of Lampkins Crossing's Concept Plan upon compliance with an ASHTO policy which is not consistent with the requirements imposed on other similarly situated parties; (ii) the County refused to exercise its power of eminent domain to acquire a 50-foot right-of-way that would serve the Lampkins Crossing's project even though the County had used its power of eminent domain on other similarly situated projects; (iii) the County has no rational basis to treat Lampkins Crossing differently from other similarly situated parties; and (iv) the County's above-described actions are clearly arbitrary and unreasonable and are a denial of Lampkins Crossing's constitutional right to equal protection in violation of 42 U.S.C. §1983 under color of state law. (Complaint, ¶58-64).

Lampkins Crossing does not allege a constitutional takings claim. In fact, Lampkins Crossing would not have standing to bring a constitutional takings claim because Lampkins Crossing was never the owner of the property. (Moon Decl., ¶5).

## IV. LAW AND ANALYSIS

**A.  THE RIPENESS REQUIREMENT FOR A CONSTITUTIONAL TAKINGS CLAIM DOES NOT APPLY TO LAMPKINS CROSSING'S CLAIMS AGAINST THE COUNTY.**

The ripeness requirement for a constitutional takings claim does not apply to Lampkins Crossing's claims against the County because Lampkins Crossings does not allege a constitutional takings claim. In *Pearson v. City of Grand Blanc*, 961 F.2d 1211 (6th Cir. 1992), the Sixth Circuit explained the reason for the ripeness requirement in a takings case as follows:

> In cases where a plaintiff claims that the zoning is so stringent as to constitute a taking without just compensation, the Supreme Court requires what amounts to

exhaustion of state judicial remedies, including the bringing of an inverse condemnation action, if the state affords such a remedy. A depravation of economic viability of the property is also a prerequisite for bringing such an action. The rationale for these requirements in takings cases is that the federal court cannot know what has been taken or what compensation has been afforded until state remedies have been utilized. Until that time, the federal court cannot determine whether a taking has occurred, where the compensation is due, or, if it has been afforded, whether it is just. These prerequisites are not technically an exhaustion requirement, but "a product of ripeness."

*Pearson*, 961 F.2d at 1214-15 (internal citations omitted).

As described below, this requirement does not apply where, as here, a plaintiff alleges procedural and substantive due process claims and equal protection claims without alleging a takings claim.

In *Nasierowski Brothers Investment Company v. City of Sterling Heights*, 949 F.2d 890 (6th Cir. 1991), the Sixth Circuit considered facts very similar to this case and a motion to dismiss virtually identical to the County's present motion. In *Nasierowski*, Nasierowski purchased an undeveloped parcel of real estate based upon assurances from the City of Sterling Heights that the parcel was situated in a zoning district that would accommodate Nasierowski's proposed development. Similar to the steps the County required Lampkins Crossing to follow in this case, Nasierowski was required to undergo a protracted process to obtain approval for its proposed development. While Nasierowski was in the process of fulfilling the city's requirements, the city changed the zoning of the property without giving Nasierowski proper notice. Once the property was rezoned, the city rejected Nasierowski's building permit application on the grounds that the recently adopted zoning ordinance did not permit the proposed use of the property. Without requesting a variance from the city's requirements, Nasierowski filed suit in federal district court alleging a violation of its procedural due process rights. The city filed a motion for summary judgment, arguing that Nasierowski's procedural due process claim was not ripe for adjudication because the City's action was not "final" under

11

Case 3:17-cv-00906   Document 15   Filed 08/30/17   Page 11 of 16 PageID #: 144

*Williamson County Regional Planning Commission v. Hamilton Bank*, 43 U.S. 172, S.Ct. 3108, 87 L.Ed.2d 126 (1985). The district court granted the city's motion, and Nasierowski appealed. Upon appeal, the Sixth Circuit held as follows:

> The trial court's reliance on *Williamson* was improper, because, unlike the plaintiff in that case, Nasierowski did not allege an unconstitutional "taking" of his property under the fifth and fourteenth amendments. To the contrary, Nasierowski asserted that he was deprived of *procedural* due process when he was not accorded a public hearing at which to challenge the reclassification of the zone in which is property was situated.
>
> *Id*. at 893.

Stating that "a procedural due process claim is instantly cognizable in federal court without requiring a final decision on the proposed development from the responsible municipal agency," *Id.* at 894, the Sixth Circuit explained,

> Conceptually, in the case of a procedural due process claim, "the allegedly infirm process is an injury in itself," whereas in the context of a takings claim, the alleged injury—a diminution of property value—cannot be assessed with any degree of certainty until the municipality arrives at a final decision as to how the property owner will be permitted to develop his property.
> *Id*. (quoting *Hammond v. Baldwin*, 866 F.2d 172, 176 (6th Cir. 1989). [1]

In *Seguin v. City of Sterling Heights*, 968 F.2d 584, 589 (6th Cir. 1992), landowners brought an action against the city alleging that the city's rezoning practices deprived the plaintiffs of their rights to due process, equal protection, and just compensation. In *Seguin*, the Sixth Circuit again held that the plaintiffs' due process claim was ripe and not subject to the ripeness requirements again for a takings claim. The Sixth Circuit explained:

> In the instant case, the plaintiffs' injury occurred when the city council passed the zoning ordinance. It was at that time that the plaintiffs were first subjected to procedures which they claimed violate the Due Process Clause. More specifically, plaintiffs contend that the notice-by-publication requirement, as

---

[1] In reaching this decision, the Sixth Circuit relied upon the Ninth Circuit decision in *Harris v. Riverside County*, 904 F.2d 497, 500 (9th Cir. 1990). In *Harris*, the Ninth Circuit stated, "[p]rocedural due process claims arising from an alleged taking may be subject to the same ripeness requirements as the taking claim itself depending on the circumstances of the case." The Ninth Circuit eventually ruled that "because [the plaintiff's] procedural due process claim does not directly arise from, or rely on his taking claim," it was not subject to ripeness constraints. *Id*. at 501.

12

prescribed by statute, did not comport with due process. Rather, they argue that personal notice should be required under the present circumstances. We agree that this is the type of injury that is instantly cognizable in federal court, regardless of whether the City has reached a final decision on the merits of their claim.

*Id.* at 589.

In *Millington Home Investors, Ltd. v. City of Millington, Tennessee*, 60 F.3d 828 (6th Cir. 1995), the Sixth Circuit yet again held that the ripeness requirement for a takings claim does not apply to a procedural due process claim. *Id*. at 8. In so holding, the Sixth Circuit rejected the argument that the substantive due process claim is subject to the same ripeness requirement as in a takings case, noting that the plaintiff had abandoned its takings claim on appeal. Thus, at the time the case came before the Sixth Circuit, it was a "pure due process case," not one in which the due process claims are ancillary to a takings claim. *Id*. at 7.

As to the County's argument that Lampkins Crossing's procedural due process claim is not ripe because it is "ancillary to the main issue," that analysis only applies when the main issue is an alleged taking under the Fifth and Fourteenth Amendments. In *Bigelow v. Michigan Department of Natural Resources*, 970 F.2d 154 (6th Cir. 1992), the Sixth Circuit distinguished *Nasierowski* on the basis that the claim before the Court "does not present a pure claim of procedural due process, but instead it involves several constitutional claims." *Bigelow*, 970 F.2d at 159. Furthermore, the Sixth Circuit in *Bigelow* noted, "[s]tanding alone, the plaintiffs' procedural due process claim might be ripe for adjudication." *Id*. (noting that ripeness requirements for just compensation claims "do not apply to procedural due process challenges to a zoning ordinance.")

The ripeness requirement for a takings claim also does not apply to Lampkins Crossing's substantive due process and equal protection claims. In *Pearson*, the district court dismissed the plaintiff's substantive due process and equal protection claims, reasoning that the ripeness

13

requirements under federal "takings" analysis applies to all other categories of federal zoning cases. *Id*. at 1215. Upon review, the Sixth Circuit found otherwise:

> After exhaustive research, we find that this proposition—while it has undoubted salutary advantage of minimizing the involvement of federal courts in local zoning—cannot be reconciled with current controlling precedent.
>
> *Id*. at 1214.

Relying upon *Nasierowski*, the Sixth Circuit held that the ripeness requirement in a takings case did not apply to the plaintiff's substantive due process or equal protection claims. *Id.* at 1216.

A few years later in *Millington* the Sixth Circuit, relying on *Pearson*, reversed a district court's dismissal of a plaintiff's substantive due process claim, holding that "the district court erred in finding that plaintiff's substantive due process claim was not ripe for adjudication." *Id.* at 8.

Based upon the foregoing consistent Sixth Circuit authority, the ripeness requirement for a constitutional takings claim does not apply to Lampkins Crossing's claims against the County.

**B. IF THE RIPENESS REQUIREMENT FOR A CONSTITUTIONAL TAKINGS CLAIM APPLIED TO LAMPKINS CROSSING'S CLAIMS AGAINST THE COUNTY, COMPLIANCE WITH THAT REQUIREMENT WOULD HAVE BEEN FUTILE.**

It would have been futile for Lampkins Crossing to apply for a variance as to the County's 50-foot right-of-way requirement. (Moon Decl., ¶15). Once the County informed representatives of Lampkins Crossing that there was not, in fact, a pre-existing 50-foot right-of-way along Lampkins Bridge Road, the County refused to consider the Concept Plan unless Lampkins Crossing acquired a 50-foot right-of-way. (Moon Decl., ¶ 15). Although there were discussions about a reduction of the required slopes on Lampkins Bridge Road and about submitting a revised concept plan with less extensive road improvements and less density, the

14

County made it clear that in order to move forward with the approved Concept Plan, a 50-foot right-of-way along Lampkins Bridge Road would be required. (Moon Decl., ¶15).

In addition, Section 5.02(F) of the Zoning Ordinance states:

> **(F)  VARIANCE REVIEW STANDARDS**
>
> **(1)**  In accordance with Section 13-7-109, Tennessee Code Annotated, the BZA may authorize a Variance from such strict application so as to relieve such difficulties or hardship only where, by reason of exceptional narrowness, shallowness, or shape of a specific piece of property at the time of the enactment of this Ordinance or by reason of exceptional topographic conditions or other extraordinary and exceptional situation or condition of such piece of property, the strict application of the regulations of this Ordinance would result in peculiar and exceptional practical difficulties to or exceptional and undue hardship upon the owner of such property, authorize, upon an appeal relating to the property, a Variance from such strict application so as to relieve such difficulties or hardship; provided, that such relief may be granted without substantial detriment to the public good and without substantially impairing the intent and purpose of this Ordinance.
>
> **(2)**  The fact that a site or development does not conform to this Ordinance prior to the consideration of a Variance application may not be used as a basis for the granting of a Variance.
>
> (County Zoning Ordinance, §5.02(F)).

In this case, Lampkins Crossing would not seek a variance because of exceptional narrowness, shallowness, or shape of the Property by reason of exceptional topographic conditions or other extraordinary and exceptional situation or condition of the Property. (Moon Decl., ¶16). Rather, such a variance would only have been sought to avoid compliance with the County's extra-legal requirement to obtain a 50-foot right-of-way on property Lampkins Crossing did not own or control. (Moon Decl., ¶16).

## V. <u>CONCLUSION</u>

The County's motion to dismiss should be denied. Lampkins Crossing was not required to comply with the ripeness requirement for a constitutional takings claim as a prerequisite to

15

pursuing its rights to substantive due process, procedural due process, and equal protection. Even if that ripeness requirement applied to Lampkins Crossing's claims against the County, Lampkins Crossings was excused from complying with it because doing so would have been futile.

RESPECTFULLY SUBMITTED,

/s/ Todd E. Panther
Todd E. Panther (#14438)
**Tune, Entrekin & White, P.C.**
315 Deaderick Street, Suite 1700
Nashville, TN  37238
(615) 244-2770 - telephone
(615) 244-2778 – fax
tpanther@tewlawfirm.com – e-mail
*Attorney for Lampkins Crossing, LLC.*

## **CERTIFICATE OF SERVICE**

I hereby certify that on _____, 2017, a copy of the foregoing Response by Lampkins Crossing, LLC in Opposition to Motion to Dismiss by Williamson County by was filed electronically.  Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.  All other parties will be served by regular U.S. mail.  Parties may access this filing through the Court's electronic filing system.

Douglas Berry
**Miller & Martin PLLC**
401 Commerce Street, Suite 720
Nashville, Tennessee 37219
doug.berry@millermartin.com

/s/ Todd E. Panther
Todd E. Panther (#14438)