# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| LAMPKINS CROSSING, LLC ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:17-cv-00906 |
| ) | Judge Aleta A. Trauger |
| WILLIAMSON COUNTY, TENNESSEE ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM & ORDER

Pending before the court is a Motion to Dismiss (Doc. No. 9), filed by the defendant, Williamson County, Tennessee, to which the plaintiff, Lampkins Crossing, LLC ("Lampkins") has filed a response (Doc. No. 15), and Williamson County has filed a Reply (Doc. No. 19). For the reasons discussed herein, the motion will be granted with regard to Lampkins' substantive due process and equal protection claims, which will be dismissed. The court orders Lampkins to show cause as to why its procedural due process claim related to notice of Resolution 6-16-32 should not be dismissed. Lampkins' other procedural due process claims will be dismissed.

## FACTS & PROCEDURAL HISTORY

Lampkins is an LLC consisting of a sole member, Tom Moon, and incorporated for the purpose of developing a residential subdivision in Williamson County, Tennessee. (Doc. No. 9-7.) Williamson County is a political subdivision of the State of Tennessee. (Doc. No. 1.) Williamson County created the Williamson County Regional Planning Commission (the "Commission") and delegated to it the land use, planning, and development functions of Williamson County pursuant to Tenn. Code Ann. § 13-3-401. (*Id*.) In 2015, Lampkins acquired an option to buy 147 acres of Williamson County land on which it planned to develop Lampkins

1

Crossing, a 133-unit subdivision. (*Id.*) The maximum number of allowable units for the 147-acre parcel in question under then-existing Williamson County land use laws and regulations was 133. (*Id.*) Upon acquiring the option, Lampkins began the process of obtaining the necessary Williamson County planning approvals for Lampkins Crossing. (*Id.*)

On June 9, 2016, Lampkins submitted to the Commission the concept plan for Lampkins Crossing. (*Id.*) Pursuant to Section 19.05 of the Williamson County Zoning Ordinance, the Commission ordered a traffic study from an outside engineer to evaluate the traffic impact of the development. (Doc. No. 16-1.) Based on the traffic study, the Commission conditionally approved Lampkins' proposal. (*Id.*) However, the Commission mandated compliance with criteria drawn from the traffic study, which relied on a policy promulgated by an independent entity, the American Association of State Highway and Traffic Officials ("AASHTO"). (*Id.*) Notably, the Commission required that a 50-foot right-of-way be secured along a road bordering the development site to allow for necessary expansion and improvements. (*Id.*)

On June 13, 2016, the County passed Resolution 6-16-32, altering the traffic shed requirements for the site of the proposed Lampkins development. (*Id.*) On July 14, the Commission approved the minutes of the June 9 meeting, formalizing its conditional approval. Lampkins submitted a preliminary plat on August 17. (Doc. No. 9-1.) On November 18, attorneys for Lampkins sent the Commission a letter requesting a reconsideration of the concept plan, based upon an alleged mutual mistake between the parties as to whether a right-of-way could be secured. (*Id.*) Lampkins did not send a formal follow-up request or submit the request for reconsideration to be set on the Commission's agenda. (*Id.*) At a November 28 meeting, Lampkins informed the Commission that it had attempted and failed to obtain the necessary approvals from neighboring property owners to establish the right-of-way. (Doc. No. 16-1.) The

Commission declined Lampkins' request that it exercise its power of eminent domain to secure the right-of-way. (*Id*.) The parties discussed potential alternatives regarding other requirements set forth in the Commission's conditional approval of the concept plan, and the parties discussed potential plan revisions over the following months. (Doc. No. 9-1.)

On January 31, 2017, the parties met for the last time. (*Id*.) They discussed various options for proceeding, including a plan with lesser density that would require a new traffic count, a relocation of the road improvements so as to decrease the number of third-party approvals required for the right-of-way, and a resubmission of the concept plan with the burden on Lampkins to prove that the road improvements, and thus the right-of-way, were not needed. (*Id*.) There was no further contact between the parties. On June 2, 2017, Lampkins filed its Complaint in this case. (Doc. No. 1.)

## **LEGAL STANDARD**

The Constitution confers upon federal courts jurisdiction limited to "cases" or "controversies." U.S. Const. art. III, § 2. Federal courts thus cannot hear disputes that have not yet ripened into "cases" or "controversies." "The ripeness doctrine is one of several justiciability doctrines 'drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction.'" *Kiser v. Reitz*, 765 F.3d 601, 606 (6th Cir. 2014) (quoting *Reno v. Catholic Soc. Servs., Inc.*, 509 U.S. 43, 57 n.18 (1993)). The ripeness requirement exists, in part, in order to "prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements." *Abbott Labs. v. Gardner*, 387 U.S. 136, 148 (1967).

Challenges to local land use decisions are not ripe if the government entity being challenged has not issued a "final decision." *See Williamson County Regional Planning Comm'n*

*v. Hamilton Bank*, 473 U.S. 172, 186 (1985). With regard to land use disputes, the Sixth Circuit has defined the "final decision" requirement as "an insistence that the relevant administrative agency resolve the appropriate application of the zoning ordinance to the property in dispute." *Miles Christi Religious Order v. Twp. of Northville*, 629 F.3d 533, 537 (6th Cir. 2010). Resolution entails a "final, definitive position regarding how it will apply the regulations at issue to the particular land in question." *Williamson*, 473 U.S. at 191.

Although *Williamson County* addressed only regulatory takings and substantive due process claims, the Sixth Circuit has held that the finality requirement extends to other constitutional claims, including equal protection claims. *See Insomnia Inc. v. City of Memphis, Tennessee*, 278 F. App'x 609, 614 (6th Cir. 2008) ("While we have not addressed the ripeness issue in the context of a First Amendment challenge to land use, we have done so in cases raising other challenges to land use, including procedural due process claims, takings claims, substantive due process claims, and equal protection claims. In fact, the only type of case in which we have not imposed the finality requirement on constitutional claims arising out of land use disputes is that which presents a purported violation of procedural due process."); *see also Miles Christi Religious Order*, 629 F.3d at 537 ("In addition to takings claims, we have applied the finality requirement to other constitutional and statutory challenges to local land use requirements."); *Grace Community Church v. Lenox Twp.*, 544 F.3d 609, 617 (6th Cir. 2008) (applying the finality requirement to an equal protection claim and finding it unripe).

As noted by the court in *Insomnia*, an exception exists for a certain class of procedural due process claims. *See Nasierowski Bros. Inv. Co. v. City of Sterling Heights*, 949 F.2d 890, 894 (6th Cir. 1991). If "the allegedly infirm process is an injury in itself," a procedural due process claim is "instantly cognizable in federal court." *Id*; *see also Bigelow v. Michigan Dep't*

*of Nat. Res.*, 970 F.2d 154, 160 (6th Cir. 1992) ("*Nasierowski* appears to stand merely for the sensible proposition that while different circumstances may produce different results, the final decision rule does not apply when the denial of procedural due process itself creates an injury."). The Sixth Circuit has carefully limited this exception only to cases where a procedural injury, separate from the alleged constitutional injury, occurs. *See J-II Enter., LLC v. Bd. of Comm'rs of Warren Cty., Ohio*, 135 F. App'x 804, 807 (6th Cir. 2005) (quoting *Nasierowski Bros. Inv. Co.*, 949 F.2d at 899) (Martin J., concurring) ("[W]e retain the finality requirements for procedural due process claims where we cannot find a single, concrete separate injury or where the procedural due process claim is in reality an adjunct to a taking or other constitutional claim."); *see also Warren v. City of Athens, Ohio*, 411 F.3d 697, 708 (6th Cir. 2005) (noting that a procedural due process claim is not ancillary if it "addresses a separate injury.").

## ANALYSIS

    I.      Substantive Due Process and Equal Protection

Lampkins' substantive due process and equal protection claims are not ripe because the Commission did not reach a final decision. It is clear from the record that Williamson County did not take a final, definitive position regarding how the Lampkins parcel could be developed. Williamson County informed Lampkins that its preliminary plat would not be considered during the August 2016 agenda cycle due to non-conformity with conditions such as the 50-foot right-of-way. However, this decision was not treated by the parties as final. Williamson County thereafter participated in numerous discussions with Lampkins for a span of approximately five months regarding potential compromises to allow some development on the parcel. Williamson County encouraged Lampkins to submit a revised plan or to seek reconsideration of the decision to condition approval of the preliminary plat on traffic conditions, such as the 50-foot right-of-

way. Lampkins intimated that it would pursue one of these alternatives. Instead, Lampkins ceased contact with Williamson County and, months later, initiated the instant litigation. Williamson County's non-approval of Lampkins' initial plan, followed by months of subsequent discussions aimed at finding a viable way to allow Lampkins' development to proceed, does not constitute a final decision.

The Sixth Circuit case *Insomnia, Inc. v. City of Memphis* is instructive. 278 F. App'x. 609 (6th Cir. 2008). In *Insomnia*, the city denied approval of a land use plan submitted by the plaintiff. The city told the plaintiff to resubmit its plan with suggested revisions, but instead the plaintiff appealed to the city council and then filed suit in federal court. *Id*. at 611. The court found that the plaintiff's claims were not ripe because a final decision had not been reached. It explained: "[t]he [city's] actions amounted to an interim order informing Plaintiffs to resubmit their proposal in further detail. Since Plaintiffs did not submit a revised application on the basis of which the [city] could issue a final decision, the court concluded that Plaintiffs had not suffered a discrete injury and so their claim was premature for federal review. We agree." *Id.* at 613–14 (6th Cir. 2008). As did the defendant in *Insomnia*, Williamson County followed up on its initial denial of approval with specific recommendations on how Lampkins should proceed to obtain a more definite decision. Williamson County's initial decision not to consider Lampkins' preliminary plan was therefore not final.

Lampkins suggests that Williamson County's decision was essentially final because any further course of action by Lampkins would have been futile. First, Lampkins argues that, despite discussions about revising the Lampkins plan in a way that would lessen its traffic impact and required road improvements, Williamson County "made it clear" that the 50-foot right-of-way would be required. (Doc. No. 16-1.) But although the parties specifically addressed the

6

option of Lampkins resubmitting its initial plan for formal reconsideration of the 50-foot right-of-way, Lampkins took no meaningful action to challenge the traffic conditions set forth by Williamson County. Based on the record, the court cannot find that an option mutually discussed by the parties as the appropriate method of seeking reconsideration would have necessarily been futile.

Second, Lampkins argues that it could not have applied for a variance because the applicable Williamson County zoning ordinance does not allow variances for traffic conditions. Although the Supreme Court in *Williamson* did premise its finding of no finality on a developer's failure to seek a variance, there is nothing in the opinion that specifically requires that a variance, rather than some other formal reconsideration, be sought. *Williamson County Regional Planning Comm'n v. Hamilton Bank*, 473 U.S. 172, 193 (1985). The *Williamson* Court focused its finality inquiry on whether a denial was conclusive: "In short, the Commission's denial of approval does not conclusively determine whether respondent will be denied all reasonable beneficial use of its property, and therefore is not a final, reviewable decision." *Id*. Regardless of whether a variance was available to Lampkins, there were formal options available that would have conclusively determined whether Williamson County was denying all reasonable beneficial use of the Lampkins parcel. Lampkins did not avail itself of those options. Its substantive due process and equal protection claims are therefore not constitutionally ripe and cannot be heard by this court.

  II.  Procedural Due Process

Lampkins alleges two types of procedural due process claims. The first deals with Williamson County's use of the external traffic study, which relied upon AASHTO policy, in

evaluating Lampkins' development plan. The second deals with Williamson County's considering and passing Resolution 6-16-32 without giving notice to Lampkins.

Lampkins' procedural due process claims related to its use of the external traffic study are not ripe because Lampkins did not suffer a purely procedural injury separate from its alleged constitutional injuries. Sixth Circuit case law is clear that an alleged procedural injury is ancillary to a plaintiff's substantive claims unless it is separate and discrete. *See Braun v. Ann Arbor Charter Twp*, 519 F.3d 564, 572 (6th Cir. 2008). In determining whether a procedural injury is separate and discrete from substantive injuries, the Sixth Circuit has "focused on the circumstances of the specific case—and particularly the issue of when the alleged injuries occurred—before deciding whether to apply *Williamson County* to both claims." *Id*.

Lampkins' Complaint couches alleged injuries related to Williamson County's use of the traffic study as procedural. (Doc. No. 1.) But Lampkins does not claim that Williamson County's use of the traffic study was deficient because Lampkins was deprived of any notice or opportunity to be heard. Rather, Lampkins alleges that it suffered a procedural injury simultaneous to its substantive injuries: it claims it was injured when Williamson County allegedly applied AASHTO policies to Lampkins' proposed plan. Without a separate injury, any procedural due process claim that Lampkins may have is ancillary to its substantive due process and equal protection claims. Thus, Lampkins does not have an "instantly cognizable" claim related to Williamson County's use of its external traffic study, and Lampkins therefore cannot satisfy the requirements for constitutional ripeness for those claims. *See Nasierowski Bros. Inv. Co.*, 949 F.2d at 894.

The only purely procedural injury that Lampkins claims is that Williamson County did not provide it notice relating to Resolution 6-16-32. This claim stems from Lampkins' allegation

8

that "[t]he County purportedly changed the traffic shed requirements applicable to the Property without complying with the then-existing legal requirements to do so." (Doc. No. 1.) Lampkins claims that, prior to the consideration and passing of Resolution 6-16-32, Williamson County "did not follow lawful procedures, including, without limitation, giving notice to Lampkins . . . that the proposed change in the traffic shed requirement would decrease the permitted density on the Property by more than 80%." *Id.* Although Lampkins offers no justification for its claim that it was entitled to notice before Williamson County adopted the resolution, it does allege a procedural injury separate from its other constitutional claims. Lampkins suffered this injury as soon as Resolution 6-16-32 was passed, regardless of whether Williamson County later enforced the resolution against Lampkins. This is precisely the type of "instantly cognizable" procedural injury contemplated by the Sixth Circuit. The court therefore finds that Lampkins' procedural due process claim related to Resolution 6-16-32 is ripe.

Williamson County contends that, because Lampkins cites to no ordinance, law, or precedent that requires notice to property owners before passing such a resolution, it should not be allowed to circumvent ripeness requirements. Whether Lampkins was entitled to notice before the Resolution was considered and passed is a merits determination not properly considered under a 12(b)(1) motion. However, the court shares the Sixth Circuit's concern that plaintiffs alleging constitutional land use injuries may "easily bypass the *Williamson County* rule by attaching an unclear and underdeveloped procedural due process claim." *Braun*, 519 F.3d at 573. The court will therefore construe Williamson County's 12(b)(1) motion to dismiss as a 12(b)(6) motion to dismiss with regard to Lampkins' procedural due process claim. *Kubicki v. Brady*, 829 F. Supp. 906, 911 (E.D. Mich. 1993), *aff'd*, 41 F.3d 1507 (6th Cir. 1994) ("This court construes defendant's motion to dismiss under Rule 12(b)(1) as a motion to dismiss under Rule

9

12(b)(6)."). To survive a 12(b)(6) motion, allegations "must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009); *Twombly*, 550 U.S. at 556.

Lampkins has failed to state any legal authority entitling it to notice by Williamson County of the consideration and passing of Resolution 6-16-32. Absent a showing by Lampkins that Williamson County owed it notice, Lampkins' procedural due process claim cannot proceed. Lampkins has fifteen days to show cause as to why it was due notice related to Resolution 6-16-32.

## CONCLUSION

For the foregoing reasons, Metro's Motion to Dismiss is hereby **GRANTED** in part. Lampkins is ORDERED to show cause within fifteen days that it was entitled to notice by Williamson County of the consideration and passing of Resolution 6-16-32. Lampkins' other claims are dismissed.

It is so **ORDERED**.

ALETA A. TRAUGER
United States District Judge